THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| AGNES J. MARTINEZ,<br><br>        Plaintiff,<br><br>v.<br><br>LANE S. WOLFENBARGER, in his individual capacity; PAUL D. MULLENAX, in his individual capacity; and SALT LAKE CITY, a municipal corporation,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [44] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00547-DBB-DBP<br><br>District Judge David Barlow |

      Before the court is Defendants Lane S. Wolfenbarger ("Officer Wolfenbarger"), Paul D. Mullenax ("Officer Mullenax"), and Salt Lake City's (the "City") (collectively, "Defendants") Motion to Dismiss Plaintiff Agnes J. Martinez's ("Ms. Martinez") Amended Complaint.[1] For the reasons below, the court grants Defendants' motion to dismiss the illegal search and equal protection claims.[2]

## BACKGROUND

      On the evening of September 1, 2023, Ms. Martinez was experiencing homelessness and alleges that she parked her vehicle where she and her dog could safely sleep in it.[3] Two Salt Lake City police officers, Officer Wolfenbarger and Officer Mullenax, approached Ms. Martinez's vehicle during what they termed a "proactive patrol" and indicated for her to roll

---

[1] Defs.' Mot. to Dismiss Am. Compl. ("Mot."), ECF No. 44, filed Sept. 17, 2025.
[2] Defendants do not challenge the excessive-force claim in their motion.
[3] Am. Compl. ¶ 7, ECF No. 43, filed Sept. 10, 2025.

1

down her window.[4] Officer Wolfenbarger told Ms. Martinez that "it would be best to not park here" because of problems they were aware of in the area.[5] Before Ms. Martinez could drive somewhere else, however, Officer Wolfenbarger ordered her to exit the vehicle.[6]

Officer Wolfenbarger remarked that he could smell marijuana in her vehicle.[7] Ms. Martinez responded that she had a pipe and "a little bit of weed."[8] Ms. Martinez obeyed Officer Mullenax's order to stand out of reach of the vehicle while Officer Wolfenbarger searched her vehicle.[9] When she asked if they needed a warrant, Officer Wolfenbarger replied that he did not because "it's a vehicle exception."[10] Then Officer Wolfenbarger conducted what he described in his report as a "warrantless search, based on plain smell, of the vehicle."[11]

During the search, Officer Wolfenbarger opened containers "and other enclosed items" in the vehicle while Ms. Martinez, who is 5'2", stood where nothing in the vehicle was within her reach.[12] Officer Wolfenbarger found a couple of drug-related items and told Ms. Martinez to put her hands behind her back.[13] When she asked why, he replied, "Because you're going in handcuffs."[14] Ms. Martinez again asked why and Officer Wolfenbarger replied, "Because." As he attempted to handcuff her, she resisted by tensing her arms.[15] Officer Wolfenbarger said,

---

[4] *Id.* ¶ 4.
[5] *Id.* ¶ 13.
[6] *Id.* ¶¶ 14–16.
[7] *Id.* ¶ 20.
[8] *Id.* ¶ 21.
[9] *Id.* ¶¶ 17, 22.
[10] *Id.* ¶ 23.
[11] *Id.* ¶ 24.
[12] *Id.* ¶¶ 18, 28, 34.
[13] *Id.* ¶¶ 39–40.
[14] *Id.* ¶¶ 41–42.
[15] *Id.* ¶ 47.

"Stop. We're gonna take you to the ground next. Do you wanna do that? Do you wanna go to the ground? Relax your arms. Relax your arms. Right now."[16]

Ms. Martinez continued to resist so Officer Wolfenbarger performed a leg sweep maneuver that slammed Ms. Martinez to the ground where she landed on her left leg.[17] Officer Wolfenbarger dropped his weight onto that leg, above her knee while Officer Mullenax dropped his weight onto the lower part of her leg.[18] Officer Wolfenbarger heard Ms. Martinez's leg "crack," and Officer Mullenax felt Ms. Martinez's leg break.[19] Ms. Martinez cried out in pain, "My leg! My leg!"[20]

Ms. Martinez was taken in an ambulance to a hospital where the physician who treated her immediately recognized that Ms. Martinez's leg injury was so severe that it was "limb threatening."[21] Although doctors tried to save the leg through surgery, it was unsuccessful and doctors had to amputate, first through the knee and then above the knee.[22]

Ms. Martinez was criminally charged based on the events of September 1, 2023.[23] In exchange for pleading guilty to possession of a controlled substance, Ms. Martinez's remaining charges were dismissed and she was sentenced to probation rather than jail time.[24]

---

[16] *Id.* ¶ 48.
[17] *Id.* ¶¶ 55–56.
[18] *Id.* ¶ 57.
[19] *Id.* ¶¶ 59–60.
[20] *Id.* ¶¶ 63–64.
[21] *Id.* ¶¶ 83, 85.
[22] *Id.* ¶¶ 86–88.
[23] *Id.* ¶ 92.
[24] Mot. ¶ 16. *See* Ex. 1 [Docket] at 14; Ex. 6 [Sentence, Judgment, Commitment] at 2. Defendants request the court to take judicial notice of the documents from the state case filed concurrently with the motion as Exhibits 1 through 6. *See* Mot. n.1. "Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). Accordingly, the court takes judicial notice of the attached documents from the state court action.

Ms. Martinez alleges that Officers Wolfenbarger and Mullenax violated her constitutional rights by illegally searching her vehicle and using excessive force in arresting her.[25] She also alleges that Officer Mullenax violated her constitutional right to equal protection by his unlawful actions that were based on animus against her as an unhoused person.[26] Lastly, Ms. Martinez asserts an excessive-force cause of action against Salt Lake City for not revising its policies, supervision, or training to discourage the takedown method.[27] Defendants filed a Motion to Dismiss only the illegal search and equal protection claims.[28]

## STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that falls short of this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[29] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[30]

---

[25] Am. Compl. ¶ 100.
[26] *Id.* ¶ 101.
[27] *Id.* ¶ 112.
[28] Mot. 1.
[29] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).
[30] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

However, a "complaint cannot rely on labels or conclusory allegations—a 'formulaic recitation of the elements of a cause of action will not do.'"[31] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[32] "When analyzing plausibility, plaintiff's allegations are 'read in the context of the entire complaint' and a plaintiff need only 'nudge' their claim 'across the line from conceivable to plausible.'"[33]

## DISCUSSION

Ms. Martinez brings two claims under § 1983 that Defendants have moved to dismiss.[34] She claims that Officer Wolfenbarger and Officer Mullenax violated her constitutional rights by illegally searching her vehicle and that Officer Mullenax violated her right to equal protection of the laws by treating her differently because she was homeless.[35] In response, Defendants assert that the Fourth Amendment claim is barred by judicial estoppel and Supreme Court precedent, and that the equal protection claim does not survive rational basis review.[36] Because the court resolves Ms. Martinez's Fourth Amendment claim under Supreme Court precedent, it need not address it under judicial estoppel. The court will first address the Fourth Amendment claim and then turn to the equal protection claim.[37]

---

[31] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[33] *Greer*, 83 F.4th at 1292 (quoting *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022)) (also quoting *Twombly*, 550 U.S. at 570) (cleaned up).
[34] As mentioned in n.2, Defendants do not seek to dismiss Plaintiff's claim that Officer Wolfenbarger and Officer Mullenax violated her constitutional rights by using excessive force against her.
[35] Am. Compl. ¶ 100–01. *See also* U.S. Const. amend. IV & XIV § 1.
[36] Mot. 1–2.
[37] Defendants contend that the equal protection and illegal search claims against the City should be dismissed because they fail and the City "cannot be held liable where there was no underlying constitutional violation by any of its officers." *See* Mot. 19. In response, Ms. Martinez contends that there are no claims for equal protection or unlawful search against the City at this point, but she reserves the right to add them after discovery. *See* Opp'n

### I. *Heck v. Humphrey* Bars the Fourth Amendment Claim.

Defendants argue that Ms. Martinez's unlawful search claim is barred by *Heck v. Humphrey*.[38] In *Heck*, the Supreme Court established that a plaintiff may not recover monetary damages in a § 1983 claim for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction invalid."[39] In other words, *Heck* forecloses a § 1983 claim for damages that, if successful, "would necessarily imply the invalidity of [the] conviction or sentence."[40] "The *Heck* doctrine prevents parties "from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions."[41]

As Defendants see it, Ms. Martinez's illegal search claim is barred because if it succeeds, it would require suppression of the evidence and invalidate her underlying conviction.[42] In response, Ms. Martinez argues for the first time that two searches occurred—pre-arrest and post-arrest—and *Heck* does not bar the post-arrest search because no probable cause existed for it.[43] This argument is problematic in multiple ways. First, the Amended Complaint makes no mention of two searches.[44] Instead, allegations about a post-arrest search debut in Ms. Martinez's

---

14– 15. As a result, there are no unlawful search or equal protection claims against the City for the court to address at this time.
[38] Mot. 10–13; *Heck v. Humphrey*, 512 U.S. 477 (1994).
[39] *Heck*, 512 U.S. at 486–87.
[40] *Id.* at 487.
[41] *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007) (citing *Muhammad v. Close*, 540 U.S. 749, 751–52 (2004)).
[42] Mot. 10–13.
[43] Opp'n 10–11.
[44] *See Perry v. Weber Cnty.*, 1:23-cv-00065, 2025 WL 1170636, at *4 ("The allegations in Plaintiff's response to the Motion to Dismiss are problematic because they are nowhere in the Complaint.").

Opposition to the Motion to Dismiss.[45] In the Tenth Circuit, it is "well-established" that when a district court determines "whether to grant a motion to dismiss," it is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."[46] Thus, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."[47] Accordingly, the court cannot consider new allegations about a post-arrest search that Ms. Martinez raises for the first time in her Opposition.

The second problem with the post-arrest search argument that Ms. Martinez asserts is its underlying documentation.[48] It appears that Ms. Martinez asks the court to consider the video recording from Officer Mullenax's body camera as support for her Fourth Amendment claim.[49] At this stage, the court must credit "all well-pleaded factual allegations in the complaint and view the allegations in a light favorable to" the plaintiff.[50] If a court relies on material outside the complaint to resolve a motion to dismiss, it usually "must convert that motion 'into a motion for summary judgment.'"[51] However, a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[52]

---

[45] Opp'n 2, 4.
[46] *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).
[47] *Perry*, 2025 WL 1170636, at *4.
[48] Opp'n 4 & n.5.
[49] Ms. Martinez cites only to the bodycam videos in her statement of additional facts about the post-arrest search and not to her Amended Complaint. *See* Am. Compl. 4.
[50] *Hoskins v. Withers*, 92 F.4th 1279, 1285 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1468 (U.S. Mar. 31, 2025) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)) (cleaned up).
[51] *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 753 (10th Cir. 2019) (quoting *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 713 (10th Cir. 2005)).
[52] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (cleaned up).

Although there is no dispute here about the authenticity of the bodycam video, the court cannot consider them for this claim because they are not central to it, as indicated by the Amended Complaint's failure to reference the bodycam video for the allegedly unlawful searches.[53] Indeed, the Amended Complaint only mentions the bodycam video in reference to Officer Wolfenbarger's failure to activate his during his initial encounter with Ms. Martinez and to how both officers muted or turned off their cameras at various points during the interaction.[54] In sum, because Ms. Martinez does not allege any facts in her Amended Complaint related to a post-arrest search or refer to the bodycam video in connection with it, the court cannot consider the post-arrest search.

The court is left, then, with the pre-arrest search that Ms. Martinez concedes, even if only "for the limited purpose of this opposition," was based on probable cause.[55] Ms. Martinez admits in her Amended Complaint that she told Officer Wolfenberger she had a pipe and "a little bit of weed" before he searched her vehicle.[56] And Officer Wolfenberger's search of Ms. Martinez's vehicle provides the basis for her conviction of possession of a controlled substance.[57] In such cases where the § 1983 claims stem from an allegedly illegal search that produced all the evidence against the plaintiff, courts in the Tenth Circuit hold that *Heck* bars the § 1983 claims.[58]

---

[53] Am. Compl. ¶ 81.
[54] Am. Compl. ¶¶ 81–82.
[55] Opp'n 10.
[56] Am. Compl. ¶ 21.
[57] Mot. 3–4.
[58] *See, e.g.*, *Anderson v. Houston*, No. 2:16-cv-00924, 2018 WL 7893044, at *4–7 (D. Utah Feb. 26, 2018) (barring plaintiff's § 1983 Fourth Amendment claim because the conviction was solely based on evidence gathered at a traffic stop); *Miller v. Foster*, No. 12-cv-02525, 2013 WL 7894943, at *2–3 (D. Colo. Nov. 18, 2013) (concluding that if the plaintiff prevailed on his § 1983 claim, it would invalidate by implication his conviction of a controlled substance because "the baggy of crack cocaine was uniquely made available as a result of the alleged illegal search"); *Beals v. Fields*, No. CIV-16-1182-C, 2016 WL 8376570, at *2–3 (W.D. Okla. Dec. 23, 2016) (concluding that if the plaintiff prevailed on his § 1983 claim, "the outcome would necessarily imply the invalidity of his

For example, in *Trusdale v. Bell*, "all of the evidence obtained (i.e., the methamphetamine and shotgun), was the result of execution of the allegedly invalid no-knock search warrant."[59] As a result, the Tenth Circuit concluded in *Trusdale* that *Heck* barred the plaintiff's § 1983 claim because an award of "damages in this civil suit would imply the invalidity of his conviction."[60]

Likewise, if Ms. Martinez were to prevail here on her Fourth Amendment claim, then the marijuana that Officer Wolfenbarger seized during his search would be suppressed and Ms. Martinez's conviction of possession of a controlled substance would be invalidated by implication. Therefore, the court concludes that the *Heck* doctrine bars Ms. Martinez's Fourth Amendment claim and accordingly grants Defendants' motion to dismiss the claim.[61]

## II.     The Equal Protection Claim Does Not Survive Rational Basis Review.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[62] Notably, "[t]he Equal Protection Clause is not a general fairness law that allows everyone who feels discriminated against to bring an action in federal court."[63] Moreover, the "Equal Protection

---

conviction and sentence because the evidence seized in the search led directly to his conviction and evidence seized in an illegal search must be suppressed").
[59] *Trusdale v. Bell*, 85 Fed. App'x 691, 693 (10th Cir. 2003).
[60] *Id.*
[61] Ms. Martinez also summarily argues that she seeks damages that are unrelated to her conviction. The examples she provides are loss of her vehicle, but she does not plead facts making it plausible that the vehicle's loss did not stem from the search that resulted in her conviction. Similarly, she notes that she has alleged "damages for physical injuries," but those are from her excessive force claim, not the "second search" she discusses in her Opposition. *See* Opp'n 11-12. Her argument does not change the result based on *Heck*.
[62] U.S. Const. amend. XIV § 1.
[63] *Wasatch Equality v. Alta Ski Lifts Co.*, 55 F. Supp. 3d 1351, 1369 (D. Utah Sept. 23, 2014), *aff'd*, 820 F.3d 381 (10th Cir. 2016).

Clause creates no substantive rights."[64] Instead, it "is essentially a direction that all persons similarly situated should be treated alike."[65]

The preliminary issue to resolve in an equal protection claim is which level of review to apply.[66] Courts apply "strict scrutiny," the least-deferential, "where the action in question implicates a fundamental right, or classifies individuals using a suspect classification, such as race or national origin."[67] If the challenged action "classifies people according to a quasi-suspect characteristic, such as gender or illegitimacy, a court will apply 'intermediate scrutiny.'"[68] And "where the challenged government action does not implicate either a fundamental right or a protected class, courts apply a 'rational basis' test."[69]

In her Amended Complaint, Ms. Martinez also invokes Utah's Uniform Operation Clause, which is the "state-law counterpart to the federal Equal Protection Clause."[70] Consequently, Plaintiffs included both federal and state equal protection arguments in their Motion to Dismiss.[71] However, Ms. Martinez did not brief the state equal protection claim or contest Defendants' arguments about it in her Opposition. Therefore, any argument based on the state equal protection claim is waived.[72]

---

[64] *Parker v. Colvin*, 640 Fed. App'x 726, 729 (10th Cir. 2016) (cleaned up).
[65] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).
[66] *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109–10 (10th Cir. 2008).
[67] *Taylor v. Roswell Indep. Sch. Dist.*, 2011 WL 13282136, at *23 (citing *Price-Cornelison*, 524 F.3d at 1109–10).
[68] *Id.*
[69] *Id.*
[70] *State v. Canton*, 2013 UT 44, ¶ 35, 308 P.3d 517. *See* Am. Compl. 11 (stating that Ms. Martinez "had a right to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution, and Article I, § 24 of the Utah Constitution").
[71] Mot. 14–19; Defs.' Reply Mem. in Supp. of Mot. to Dismiss ("Reply") 9–10, ECF No. 52, filed October 27, 2025.
[72] *See e.g.*, *Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992) (holding that failure to develop a legal argument supporting a claim results in waiver of the claim); *Walker v. Progressive Direct Ins. Co.*, 472 Fed. App'x 858, 862 (10th Cir. 2012) (concluding that an argument is waived when it is not raised or when it is inadequately briefed).

Defendants argue that Ms. Martinez's federal equal protection claim against Officer Mullenax should be dismissed because it does not survive rational basis review.[73] Both parties agree that people experiencing homelessness are not a protected class and that rational basis review applies.[74]

"Rational-basis review requires the government action to be 'rationally related to legitimate government interests.'"[75] Under the rational basis test, "the Tenth Circuit presumes the rationality of the conduct at issue and requires the Plaintiff to 'overcome the presumption of rationality.'"[76] "An equal protection claim will fail if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[77] Thus, rational review is a "highly deferential" standard.[78]

Here, Ms. Martinez alleges that Officer Mullenax "treated her more harshly than similarly situated individuals—individuals who are detained, searched on the alleged probable cause of suspicion of possession of a controlled substance, and arrested based on the same—because of her status as an unhoused person."[79] "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."[80] And in the context of a motion to dismiss under

---

[73] Mot. 14–19.
[74] Mot. 15–16; Opp'n 12. *See Anderson v. Herbert*, No. 2:13-cv-211, 2014 WL 6769907, at *5 (D. Utah Dec. 1, 2014) (holding that the homeless are not a suspect class) (citing *Teigen v. Renfow*, 511 F.3d 1072, 1083 (10th Cir. 2007); *Davison v. City of Tucson*, 924 F. Supp. 989, 993 (D. Ariz. 1006) (stating that "the level of scrutiny to be applied to government action that discriminates on the basis of homelessness is a rational review" because "no court has ever held the homeless to be a suspect class").
[75] *Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *5 (10th Cir. June 14, 2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)).
[76] *Wasatch Equality*, 55 F. Supp. 3d at 1360 (quoting *Teigen*, 511 F.3d at 1086).
[77] *Teigen*, 511 F.3d at 1083 (10th Cir. 2007) (citation omitted).
[78] *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010).
[79] Opp'n 13.
[80] *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

Rule 12(b)(6), "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications."[81]

Ms. Martinez has not met that burden. Taking her allegations in the Amended Complaint as true, Officer Mullenax's actions consisted of the following: He and Officer Wolfenbarger told Ms. Martinez she could not leave when they smelled marijuana coming from her vehicle; he directed her to stand out of reach of her vehicle and stood near her while Officer Wolfenbarger searched the vehicle; he assisted Officer Wolfenbarger in handcuffing Ms. Martinez; once Officer Wolfenbarger had used a leg sweep maneuver to subdue Ms. Martinez and she was lying on the ground, Officer Mullenax dropped his weight onto the lower part of one of her legs and felt her leg break; he pulled her broken leg to force her on her stomach and handcuff her; in response to her statement that she could not breathe, he and Officer Wolfenbarger located her inhalers and administered her medication; and they denied Ms. Martinez's request to call her daughter.[82] Granted, the Amended Complaint also included a reference to an unrelated incident in which Officer Mullenax was disciplined for misconduct toward a homeless person.[83] But these allegations do not sufficiently articulate how Ms. Martinez was "treated differently from others who were similarly situated to" her or how Officer Mullenax treats homeless arrestees differently than others.[84]

Assuming for argument sake that Ms. Martinez's allegations had shown disparate treatment, she still must allege "facts sufficient to overcome the presumption of rationality."[85]

---

[81] *Teigen*, 511 F.3d at 1083 (quoting *Brown v. Zavaras*, 63 F.3d 967, 971–72 (10th Cir. 1995)).
[82] Am. Compl. ¶¶ 15–72.
[83] *Id.* ¶¶ 75–76.
[84] *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).
[85] *Teigen*, 511 F.3d at 1083 (10th Cir. 2007) (quoting *Brown*, 63 F.3d at 971–72).

Yet under these facts, Officer Mullenax's actions could conceivably be rationally related to "[t]he government's interest in preventing crime by arrestees [that] is both legitimate and compelling."[86] Indeed, courts have repeatedly held that public safety is "a legitimate interest" and "independent rational basis."[87] Even accepting all well-pleaded facts in the Amended Complaint as true, Officer Mullenax's actions can be rationally related to public safety and are not "wholly unrelated to any legitimate state activity."[88]

Ms. Martinez also argues that Officer Mullenax's treatment of her "reflected a pattern of animus against unhoused persons."[89] However, animus "does not become a relevant consideration in determining whether there exists a rational basis for government action" unless "the animus is based on a protected class (i.e., race, alienage or national origin) or a fundamental right)" or "when there is *no* rational basis."[90] "When the plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis."[91] Thus, "if there is an independent basis (other than animus) to support a finding of rational basis it does not matter for Equal Protection Clause analysis purposes that animus may also have influenced the decision."[92] "The requirement under the law is that there is some rational basis for the action taken, not that there is an absence of

---

[86] *United States v. Salerno*, 481 U.S. 739, 749 (1987).
[87] *Evans v. Sandy City*, 2:17-cv-00408, 2017 WL 6554408, at *4 (D. Utah Oct. 12, 2017); *see also Van Sant & Co. v. Town of Calhan*, 83 F.4th 1254, 1280 (10th Cir. 2023) (stating that "there can be no debate that the health, safety, and welfare of the community is a legitimate government interest") (cleaned up).
[88] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (internal quotation marks omitted).
[89] Opp'n 13.
[90] *Wasatch Equality*, 55 F. Supp. 3d at 1367–68 (citing *U.S. Dep't of Agri. v. Moreno*, 413 U.S. 528 (1973)) (emphasis in original).
[91] *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995); *accord Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994), *cert. denied*, 513 U.S. 1002 (1994).
[92] *Id.* at 1368; *see also Powers v. Harris*, 379 F.3d 1208, 1224 (10th Cir. 2004) (rejecting equal protection claim because "we have conceived of a legitimate state interest other than a 'bare desire to harm'").

animus."[93] Therefore, because public safety is a rational, independent basis here, whether Officer Mullenax was also motivated by animus is irrelevant to the claim.

In sum, Ms. Martinez's equal protection claim does not survive rational basis review because she does not show she was treated differently from others similarly situated to her and because Officer Mullenax's conduct was "rationally related to legitimate government interests."[94]

## ORDER

Accordingly, the court GRANTS Defendants' Motion to Dismiss as to the illegal search and equal protection claims.[95]

Signed November 19, 2025.

BY THE COURT

_____
David Barlow
United States District Judge

---

[93] *Id.*; *see also Martinez v. Davis*, 393 Fed. App'x 570, 572 (10th Cir. 2010) (holding that because "the challenged action does not implicate either a fundamental right or a protected class, . . . we will uphold the government's classification so long as it bears a rational relation to some legitimate end") (cleaned up).
[94] *Washington v. Glucksberg*, 521 U.S. at 728.
[95] ECF No. 44.